UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYLAN ARELLANO and SHAWN GHAZIANI, | ) | |
| | ) | |
| Plaintiffs, | ) | 14 C 1484 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| C.T. LEACH, D.G. WILLIAMS, and CITY OF CHICAGO, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Dylan Arellano and Shawn Ghaziani brought this suit against the City of Chicago and two of its police officers, C.T. Leach and D.G. Williams, alleging violations of the First and Fourth Amendments and seeking damages under 42 U.S.C. § 1983. Doc. 1. Discovery has concluded, and a jury trial is set for November 16, 2015. Doc. 39. Now before the court are Chicago's summary judgment motion, Doc. 46, and Plaintiffs' motion for summary judgment as to liability on their Fourth Amendment claim against Leach and Williams. Doc. 49. Chicago's motion is granted and Plaintiffs' motion is denied.

**Background**

Chicago filed a Local Rule 56.1(a)(3) statement along with its summary judgment motion. Doc. 47. Each assertion in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). The briefing schedule required Plaintiffs to respond by August 21, 2015. Doc. 51. Plaintiffs did not file any response

1

materials—no brief, no Local Rule 56.1(b)(3)(B) response to Chicago's Local Rule 56.1(a)(3) statement, and no Local Rule 56.1(b)(3)(C) statement of additional facts—and did not seek an extension of time to do so.

Plaintiffs did file a Local Rule 56.1(a)(3) statement in support of their own motion for summary judgment against Leach and Williams. Doc. 49-1. Leach and Williams filed both a Local Rule 56.1(b)(3)(B) response and a Local Rule 56.1(b)(3)(C) statement of additional facts. Docs. 56-57. Local Rule 56.1(a) gave Plaintiffs an opportunity to reply to Defendants' Local Rule 56.1(b)(3)(C) statement, but they did not take it. *See* N.D. Ill. L.R. 56(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response.").

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [parties'] Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (internal quotation marks and alterations omitted); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions."); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("[W]e have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1.") (alteration omitted). Accordingly, for purposes of Chicago's summary judgment motion, the court will accept as true the facts set forth in its Local Rule 56.1(a)(3)

statement. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with a local rule, the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Koszola*, 385 F.3d at 1108-09; *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). Similarly, for purposes of Plaintiffs' summary judgment motion, the court will accept as true all assertions in Leach and Williams's Local Rule 56.1(b)(3)(C) statement. *See* N.D. Ill. L.R. 56.1(a) ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

The court will recite the facts that are undisputed or deemed admitted under Rule 56.1, and then determine whether those facts establish that the movant is entitled to summary judgment. For Chicago's motion, the facts are considered in the light most favorable to Plaintiffs, and for Plaintiffs' motion, the facts are considered in the light most favorable to Leach and Williams. *See First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) ("[B]ecause the district court had cross-motions for summary judgment before it, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted).

On March 2, 2012, Leach and Williams, both Chicago police officers, were driving around on a routine patrol. Doc. 57 at ¶¶ 8-9. Shortly before midnight, they arrived at a gas

station, where they saw Ghaziani yelling gang slogans at a customer. *Id*. at ¶¶ 10-11. Leach recognized Ghaziani as a member of the Latin Kings, a street gang. *Id*. at ¶ 12. The officers pulled up to Ghaziani to question him, but when he saw them he jumped into the passenger seat of a Dodge Caravan. Doc. 49-1 at ¶ 8; Doc. 56 at ¶ 8; Doc. 57 at ¶¶ 14-15. Williams swung the squad car in front of the Caravan, and Leach exited the car and announced that he was a police officer. Doc. 57 at ¶¶ 17-18. As Leach approached he saw Arellano, who was seated in the Caravan's driver seat, thrust his hands towards his feet. *Id*. at ¶¶ 16, 19. Worried that Arellano was reaching for a weapon, Leach ordered Arellano and Ghaziani to step outside and put their hands in the air. Doc. 49-1 at ¶ 9; Doc. 56 at ¶ 9; Doc. 57 at ¶ 20-21. Leach and Williams both drew their guns. Doc. 57 at ¶ 22.

Arellano and Ghaziani got out of the Caravan and the officers frisked them. *Id*. at ¶¶ 23-24. Leach found in Arellano's boot a clear plastic bag containing what turned out to be cocaine. *Id*. at ¶¶ 25-27, 34. The officers arrested Arellano and impounded the Caravan. *Id*. at ¶¶ 28-29. They let Ghaziani go free. *Id*. at ¶ 30.

The People of the State of Illinois, acting through the State's Attorney of Cook County, charged Arellano with criminal possession of a controlled substance. *Id*. at ¶ 31. Arellano filed a pretrial motion to suppress the cocaine. *Id*. at ¶ 37. After a hearing at which Leach and Williams both testified, the state trial court granted the motion. *Id*. at ¶¶ 38-39. The court explained its ruling as follows:

> A valid search or the right to search presupposes a valid stop. Here there was no evidence of Mr. Arellano engaged in anything illegal or that he even raised the officer's suspicion. While there may have been some observations of Shawn Ghaziani, there was certainly nothing testified to by any of the witnesses that Mr. Arellano was doing.
>
> When the officers pulled in, they pulled in in front of the defendant's vehicle. Clearly, the defendant was not free to go at that time. They got out with guns drawn and they ordered this defendant out of the vehicle. They had

4

> not seen him do anything illegal. I find that they did not have grounds to stop the defendant, so the motion is granted.

Doc. 57-3 at 98-99. The court then dismissed the charges at the prosecutor's request. Doc. 57 at ¶ 40.

Arellano and Ghaziani subsequently brought this suit against Leach, Williams, and Chicago. Doc. 1. The complaint alleges that Leach and Williams stopped and searched them solely because Ghaziani belonged to a gang, which according to the complaint violated the First and Fourth Amendments. *Id*. at ¶¶ 12, 17-21. The complaint also alleges that the officers acted in accordance with an official city policy, called "operation just cause," that encourages police to stop and search gang members without reasonable suspicion. *Id*. at ¶¶ 12-13 (original capitalization).

## Discussion

### I. Chicago's Summary Judgment Motion

As explained above, the court deems admitted all facts asserted in Chicago's Local Rule 56.1(a)(3) statement because Plaintiffs never responded to it. Plaintiffs also failed to file a brief in response to Chicago's summary judgment motion. The court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movant] to show that it is entitled to judgment as a matter of law." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (internal citations omitted). Chicago has carried its burden.

"A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom."

*Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978)).  Put another way, "local governments are responsible only for their *own* illegal acts" and may not be held "vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks omitted).  To prevail on a *Monell* claim, the plaintiff must show that a municipal employee's unconstitutional act was caused by: "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."  *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009).  In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must prove causation, demonstrating that the municipality, "through its deliberate conduct, … was the 'moving force' behind the injury alleged."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted); *see also Connick*, 131 S. Ct. at 1358 n.5; *Gable*, 296 F.3d at 539.

Plaintiffs cannot establish any of the three forms of *Monell* liability.  As for the first, the record contains no evidence that Chicago had an express policy that violates the Constitution.  The City's Local Rule 56.1(a)(3) statement refers to a Chicago Police Department policy called "Operation Just Cause," but does not explain what the policy was.  Doc. 47 at ¶¶ 8-12, 17.  The complaint alleges that Operation Just Cause requires unconstitutional searches and seizures, Doc. 1 at ¶¶ 12-13, 37-38, but "mere conclusory allegations do not constitute evidence" that can defeat summary judgment.  *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).  The

court is left with only the policy's title, which—though perhaps slightly ominous—cannot justify a finding that it had unconstitutional results.

The record also lacks evidence that Chicago has any unofficial but entrenched custom that violated the Constitution. Chicago's Local Rule 56.1(a)(3) statement cites one piece of evidence that might possibly indicate the existence of such a custom: Arellano's deposition testimony that Chicago police officers once detained his acquaintance for being a Latin King. Doc. 47 at ¶ 13; Doc. 47-2 at 4-5. That is not enough to defeat summary judgment, even assuming that it would be unconstitutional to systematically target gang members for searches and seizures. The two data points in the record—the events giving rise to this case, and the arrest of Arellano's acquaintance years earlier—do not imply any trend, much less one "so permanent and well settled to as to constitute a custom or usage with the force of law." *Gable*, 296 F.3d at 537; *see also id*. at 538 ("[T]hese three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware."); *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) (holding that evidence of a "series of bad acts" was insufficient to "support an inference of a custom or policy"); *Palmer v. Marion Cnty.*, 327 F.3d 588, 595 (7th Cir. 2003) ("Palmer's observations of the Jail's day-to-day operations over a relatively short period of time and his alleged personal knowledge of the assaults he and another inmate suffered fall far short of demonstrating a pattern of events by correctional officers indicative of an unconstitutional custom or practice."); *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1277 (11th Cir. 2000) (holding that evidence of three similar incidents did not defeat summary judgment on a *Monell* claim).

Plaintiffs also cannot establish the third form of *Monell* culpability, an unconstitutional act by a final policymaking official. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481

(1986) ("[W]here [an unconstitutional] action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). "The fact that a particular official … has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. Rather, such an official also must be responsible for establishing final government policy on a particular issue." *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (internal quotation marks and citation omitted). Read liberally, Chicago's Local Rule 56.1(a)(3) statement acknowledges that two police officers pointed guns at Arellano and Ghaziani, searched them, and arrested Arellano. Doc. 47 at ¶¶ 3-5. It cites no evidence, though, suggesting that the officers were empowered to make policy for the City. *See Eversole v. Steele*, 59 F.3d 710, 715-16 (7th Cir. 1995) (holding that even high-ranking law enforcement officers were not final policymaking officials, because "nothing in the record suggest[ed] that [they were] vested with *policymaking authority*").

Even if Plaintiffs could establish that Chicago itself violated the Constitution through a policy or custom, they could not show that the policy caused their own injuries. Chicago's Local Rule 56.1(a)(3) statement does not state that the officers stopped and searched Plaintiffs as the result of any regular practice. In fact, while the statement acknowledges that the City periodically institutes 72-hour-long actions called "Operation Just Cause," it cites internal Police Department documents showing that that no such action was in effect on the night Plaintiffs were stopped. Doc. 47 at ¶ 17; Docs. 47-5, 47-6.

Accordingly, because Plaintiffs cannot establish that Chicago committed unconstitutional acts or that its unconstitutional acts caused their injuries, summary judgment is granted to Chicago on the claims against it.

## II. Plaintiffs' Summary Judgment Motion

Plaintiffs argue that they are entitled to summary judgment as to liability on their Fourth Amendment claims against Leach and Williams because the suppression order in Arellano's criminal case collaterally estops the officers from contesting that they violated the Fourth Amendment. Doc. 49 at 5-6. The doctrine of collateral estoppel, or "issue preclusion," prohibits a party from re-litigating an issue that another court previously decided against him. To determine whether collateral estoppel applies, a federal court "look[s] to the preclusion law of the state where the judgment was rendered." *Adams v. Adams*, 738 F.3d 861, 865 (7th Cir. 2013); *see also* 28 U.S.C. § 1738 (providing that the decisions of a state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State"); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("28 U.S.C. § 1738 … requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give.") (internal quotation marks omitted); *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). In Illinois, a prior court decision precludes a party from contesting an issue if "(1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 478 (Ill. 2001); *see also Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) ("Under Illinois law, collateral estoppel requires that: (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party

or in privity with a party in the prior action.") (quoting *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999)).

For purposes of summary judgment, Plaintiffs have not satisfied the first and third elements of collateral estoppel. As for the first element, identity of issues, Plaintiffs fail to show that the state trial court decided the Fourth Amendment issue presented here. For one, the state court may not have held that *any* violation of the Fourth Amendment occurred. Arellano's motion to suppress argued that the officers violated not only the Fourth Amendment, but also its Illinois analog, Article I, Section 6 of the Illinois Constitution. Doc. 49-7 at ¶ 10. The Supreme Court of Illinois has adopted a "limited lockstep approach" to § 6: the provision's protections largely correspond to the Fourth Amendment's, but it can provide broader protection under circumstances where "a specific criterion—for example, unique state history or state experience—justifies departure from federal precedent." *People v. Caballes*, 851 N.E.2d 26, 42-43 (Ill. 2006) (internal quotation marks omitted); *see also People v. Gaytan*, 32 N.E.3d 641, 653 (Ill. 2015) (citing *Caballes* for the proposition that "there may be instances where the meaning of [the Illinois] search and seizure clause differs from that of the federal constitution."). The state court did not say whether its decision to suppress relied on the Fourth Amendment, the Illinois Constitution, or both. Doc. 57-3 at 98-99. That ambiguity makes collateral estoppel inappropriate. *See Gauger v. Hendle*, 954 N.E.2d 307, 331 (Ill. App. 2011) (noting that collateral estoppel applies only if the issue in the present case was "necessarily decided by the court rendering the prior judgment. If there is any uncertainty because more than one distinct issue of fact [was] presented to the court, the estoppel will not be applied.") (quoting *Peregrine Fin. Grp., Inc. v. Martinez*, 712 N.E.2d 861, 869 (Ill. App. 1999)); *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 935 N.E.2d 998, 1030 (Ill. App. 2010) ("In order to operate as an

estoppel, the facts sought to be relitigated must have been specifically litigated and necessarily decided.") (internal quotation marks omitted); *Betts v. Manville Pers. Injury Settlement Trust*, 588 N.E.2d 1193, 1221 (Ill. App. 1992).

The state court also did not decide that Ghaziani's rights were violated. Arellano, not Ghaziani, was the defendant in the suppression hearing, so Ghaziani's rights were beside the point. *See also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched."); *United States v. Salvucci*, 448 U.S. 83, 85 (1980) ("[D]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated."); *Fields v. Wharrie*, 740 F.3d 1107, 1113 (7th Cir. 2014) ("[A] criminal defendant will not be heard to object to the admission against him of probative evidence unlawfully seized from a third party."). Ghaziani's rights are not beside the point in this suit.

Ghaziani retorts that a holding about Arellano's rights is close enough to a holding about his own for collateral estoppel to apply, but whether the police violated Ghaziani's rights turns on materially different facts. For one, Ghaziani provided Leach and Williams with a stronger basis to suspect him of criminality than did Arellano; he shouted gang slogans at a stranger while Arellano sat passively in the car. The state court pointed out the difference in the two men's behavior when it explained its decision to suppress. Doc. 57-3 at 99 ("While there may have been some observations of Shawn Ghaziani [acting suspiciously], there was certainly nothing testified to by any of the witnesses that Mr. Arellano was doing."). Ghaziani also suffered less than Arellano as a result of the officers' actions, as Arellano but not Ghaziani was arrested.

Thus, even if Leach and Williams infringed on Arellano's rights, that does not mean that they also infringed on Ghaziani's.

Moving to the third element of collateral estoppel, Plaintiffs have not established that Leach and Williams were parties to, or in privity with a party to, Arellano's state criminal case. No one contends that Leach and Williams were formal parties to the criminal case; the People of the State of Illinois acting through the State's Attorney of Cook County, not the officers, prosecuted Arellano. *See Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). Plaintiffs instead insist that Leach and Williams were in privity with the State during the suppression hearing— that the officers had a close enough relationship with the State and the hearing that they may be bound to the hearing's outcome. Doc. 68 at 6. That argument has a very poor track record—*see Booker*, 94 F.3d at 1057 ("[Officers] Ward and Kelly were not parties to the state court proceedings [holding that the officers committed constitutional violations] and did not have a full and fair opportunity to litigate the issue of whether they had probable cause to arrest Booker," so the hearing's outcome did not bind them); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050-51 (7th Cir. 1995) (holding that police officers were not bound by a state court's decision to suppress evidence in a criminal case); *accord Potts v. Hill*, 77 F. App'x 330, 334-35 (6th Cir. 2003) (collecting cases); *Turpin v. Cnty. of Rock*, 262 F.3d 779, 782-83 (8th Cir. 2001); *McCoy v. Hernandez*, 203 F.3d 371, 374-75 (5th Cir. 2000); *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106-07 (10th Cir. 1998); *Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986); *Williams v. Kobel*, 789 F.2d 463, 470 (7th Cir. 1986)—and it will not be adopted here.

In Illinois, a party to a case is in privity with a non-party if they have "the same legal interests" and the party "adequately represent[s]" those interests. *Lutkauskas v. Ricker*, 28 N.E.3d 727, 739 (Ill. 2015). Plaintiffs have not established that Leach and Williams had the

same legal interests as the State when it was prosecuting Arellano. In *Lutkauskas*, various groups of taxpayers sued members of a school board on behalf of their school district. The Supreme Court of Illinois held that the groups were in privity with each other because they were seeking to advance the same interests:

> In this case, Lutkauskas did not bring suit in his own right to enforce a claim that was personal to him. Rather, he filed his action on behalf of the District, which was the real party in interest. As a consequence, his claims against Knutte were those of the District, as was true of the claim asserted in the earlier action. … Accordingly, Lutkauskas was in privity with the original plaintiffs ….

*Id*. at 739. *Lutkauskas* noted three United States Supreme Court cases holding that successive litigants were *not* in privity, and it distinguished them on the ground that those litigants were not representing identical interests. The first case, *Taylor v. Sturgell*, 553 U.S. 880 (2008), was

> factually distinguishable because it did not involve successive taxpayer derivative actions, in which multiple plaintiffs filed identical actions to protect the same interests of a governmental entity. Rather, the two plaintiffs in *Taylor* brought suit to enforce their own individual rights to request disclosure of federal records, and any relief afforded under the FOIA statute would accrue to them personally.

28 N.E.3d at 740. Similarly, in *Richards v. Jefferson County*, 517 U.S. 793 (1996), the taxpayer plaintiffs were seeking to recover money individually; theirs were not suits "to complain about an alleged misuse of public funds, … or about other public action that ha[d] only an indirect impact on [their] interests." 28 N.E.3d at 740 (internal quotation marks omitted). And *Lutkauskas* found *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160 (1999), inapposite for the same reason. 28 N.E.3d at 741.

*Lutkauskas* clarifies, then, that successive litigants have "the same interests" only if they are seeking the same outcome—in that case, a damages award in favor of the school district. *See also People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 826 (Ill. 1992) (holding that the Attorney General of Illinois was in privity with a charity where the charity sued

13

to recover assets from a corporation and then the Attorney General sued the same corporation to force it to return the same assets to the charity). Even tightly analogous interests will not do. *See Indian Harbor Ins. Co. v. MMT Demolition, Inc.*, 13 N.E.3d 108, 121-22 (Ill. App. 2014) (holding that tenants were not in privity with their property manager, so that a judgment in the tenants' case against a contractor who damaged their home did not preclude the property manager's insurer from pursuing its own suit against the contractor); *Dep't of Pub. Aid v. Wheeler*, 618 N.E.2d 1311, 1313-14 (Ill. App. 1993) (holding that a mother was not in privity with a public agency, so that a judgment in the mother's paternity suit against a man did not bind the agency in its own suit to establish the same man's paternity over the same children). Leach and Williams's interests in this case are not tightly analogous to, let alone the same as, the State's interests in Arellano's criminal case. The State tried to put Arellano in prison; Leach and Williams are trying to avoid paying Arellano and Ghaziani money. To the State, Arellano likely represented one of hundreds of fungible low-level drug busts; to Leach and Williams, Arellano and Ghaziani represent tens of thousands of dollars of potential personal liability. *See McCoy*, 203 F.3d at 375 ("The State of Texas's primary objective in the criminal proceedings was to secure a conviction of McCoy, not to demonstrate that the officers had performed their functions properly. Obviously, showing that the search of McCoy's home was legal was important for the state's case. However, the state was not directly representing the officers' interests.").

Plaintiffs point out that when a criminal defendant *loses* a motion to suppress and then sues police officers for constitutional violations, he can be collaterally estopped from arguing that their rights were violated. Doc. 49 at 5; Doc. 68 at 6; s*ee Allen v. McCurry*, 449 U.S. 90, 105 (1980). Given this, Plaintiffs argue that "logic and equity, fairness, and the spirit of the law or our fundamental sense of justice" suggest that criminal defendants should benefit from

14

collateral estoppel when they *win* suppression motions. Doc. 68 at 6 (emphasis omitted). That argument misunderstands the doctrine. Collateral estoppel exists to give an interested party one chance to litigate an issue. When a criminal defendant loses a suppression hearing, he has had his chance to convince a court that his rights were violated; it makes sense, then, for the court adjudicating his later civil suit to prevent him from taking another crack at the issue.

But the same does not hold when a criminal defendant wins a suppression hearing. The State has had a chance to prove that the police officers behaved constitutionally, but the officers themselves have not had that chance, so it would be unfair to prevent them from defending their actions in a subsequent suit. Illinois and federal collateral estoppel doctrines reflect that understanding; under both regimes, the litigant being estopped needs to have been a party or in privity with a party to the earlier decision, but the litigant asserting estoppel does not. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29, 350 (1971) (describing and rejecting the old "mutuality" requirement, under which the party asserting estoppel also had to have been a party to the earlier case); *Ill. State Chamber of Commerce v. Pollution Control Bd.*, 398 N.E.2d 9, 11-12 (Ill. 1979) ("The recent trend in the law in this area is to discard the identical-parties mutuality rule entirely and to require that only one party or his privy, the one against whom estoppel is attempted to be used, be identical in the second action.").

## Conclusion

For the foregoing reasons, the City of Chicago's summary judgment motion is granted and Plaintiffs' summary judgment motion is denied. The case will proceed to trial on Plaintiffs' First and Fourth Amendment claims against Leach and Williams.

October 6, 2015

_____
United States District Judge

15